249 P.3d 550 (2011)
241 Or. App. 130
In the Matter of the Compensation of Danny Kalaveras, Claimant.
STAFFING SERVICES, INC., Petitioner,
v.
Danny KALAVERAS, Respondent.
0502936; A142115.
Court of Appeals of Oregon.
Argued and Submitted September 7, 2010.
Decided February 23, 2011.
Benjamin C. Debney argued the cause and filed the briefs for petitioner.
Shawn M. Dickey, Portland, argued the cause for respondent. On the brief was Juliana E. Coons.
Before ORTEGA, Presiding Judge, and SERCOMBE, Judge, and LANDAU, Judge Pro Tempore.
ORTEGA, P.J.
Employer seeks review of an order of the Workers' Compensation Board holding that claimant's disabling back condition is compensable. Employer contends that the board erred in rejecting medical opinions stating that claimant had preexisting arthritis and, further, that the board's finding that claimant's condition is compensable is not supported by substantial evidence. We conclude *551 that the board did not err and, accordingly, affirm.
Claimant injured his back while working for employer moving pallets and stacking boxes of ice cream. After claimant developed symptoms in his low back and left leg, Dr. Morely diagnosed a lumbar strain and released claimant to modified work. An MRI revealed that claimant had disc desiccation and a left paracentral and lateral disc herniation at L5-S1, and claimant saw Dr. Malos for a neurosurgical consultation. Malos diagnosed left sciatica in S1 distribution and sought authorization to perform a left L5-S1 microdiscectomy. Malos opined that, by history, the condition appeared to be work-related.
Employer accepted a claim for lumbar strain. Drs. Williams and Lavcoe performed an independent medical examination (IME) at employer's request, and their diagnosis included
"pre-existing disc desiccation at L5-S1, lumbar strain as a result of work activities * * * followed within two days with lumbar back pain and left lower extremity pain in a left S1 distribution, compatible with a herniated disc at L5-S1 on the left, supported by a lumber MRI, which documents a herniated disc on the left at L5-S1."
Williams and Lavcoe opined that claimant's work activities were, by history, the direct cause of his back injury and herniated disc, and that the work injury was a material contributing cause of the herniated disc. However, they also opined that the preexisting disc desiccation at L5-S1 was the major contributing cause of the L5-S1 herniated disc. They said that the preexisting degenerative disc desiccation was a degenerative arthritic condition with natural aging, which was present at the time of the injury and combined with the work injury to prolong the need for treatment. The IME doctors opined that the preexisting degenerative desiccation at L5-S1 was the major contributing cause of the combined condition, with the work exposure being a material contributing cause. Claimant's former treating physician concurred in the IME report and separately offered the same opinion based on his evaluation.
Based on the reports, employer issued an amended notice accepting "lumbar strain combined with pre-existing disc desiccation at L5-S1 resulting in a combined condition involving the L5-S1 disc herniation and the combination occurred on the date of injury." On the same day, employer also denied the combined condition on the ground that the major contributing cause of the combined condition and need for treatment was the preexisting disc desiccation.
Claimant requested a hearing, contending that his L5-S1 disc herniation is compensable as a new and/or omitted condition. Claimant contended that his burden of proof was "material cause," rather than major contributing cause, because he does not have a legally cognizable arthritic condition at L5-S1 or a combined condition. Claimant maintained that employer should not have issued an acceptance for, and then denied, a combined condition and that a combined condition analysis is not appropriate. Employer responded that the medical evidence supports a finding that claimant has a preexisting arthritic degenerative disc condition at L5-S1 that combined with the work injury, with the preexisting condition being the major contributing cause of claimant's current disability and need for treatment.
In establishing the compensability of his L5-S1 disc herniation, claimant has the burden to prove, by a preponderance of the evidence, that his work injury was a material contributing cause of his disability or need for treatment. ORS 656.005(7)(a); ORS 656.266(1). A "material contributing cause" is a fact of consequence regarding the claimant's condition. Mize v. Comcast Corp-AT & T Broadband, 208 Or.App. 563, 569, 145 P.3d 315 (2006). In the context of his claim for a new or omitted condition for the L5-S1 disc herniation, claimant had the burden to establish that the claimed new or omitted condition is "otherwise compensable," i.e., that the 2005 work injury was a material cause of the disability or need for treatment. If claimant meets that burden, but the medical evidence establishes that the "otherwise compensable injury" combined at any time with a "preexisting condition" to cause or prolong disability or a need for treatment, the standard *552 for compensability becomes "major contributing cause." Employer then has the burden of proving that the "otherwise compensable injury" was not the major contributing cause of claimant's disability or need for treatment of the combined condition. ORS 656.005(7)(a)(B); ORS 656.266(2)(a).
There is no dispute in this case that claimant proved an "otherwise compensable injury." The ALJ found that a preponderance of the medical evidence established that the work injury was a material contributing cause of claimant's disability and need for treatment. The ALJ also determined that claimant suffered from a preexisting degenerative condition and that employer had properly accepted a combined condition. The question in dispute at the hearing was whether claimant's preexisting degenerative condition was "arthritis or an arthritis condition," so as to constitute a "preexisting condition" within the meaning of ORS 656.005(24)(a),[1] thereby requiring the higher, major contributing cause, standard of proof to establish compensability.
In Karjalainen v. Curtis Johnston & Pennywise, Inc., 208 Or.App. 674, 682-83, 146 P.3d 336 (2006), rev. den., 342 Or. 473, 155 P.3d 51 (2007), we said that a condition is "arthritis" if the medical evidence shows that the condition involves "inflammation of one or more joints." The ALJ in this matter found that claimant's preexisting condition involved a joint, and that finding is not disputed on review. The ALJ also found that claimant's condition was arthritic. The ALJ concluded, therefore, that claimant's degenerative disc desiccation at L5-S1 was a preexisting condition within the meaning of ORS 656.005(24)(a). The ALJ concluded further, based on the unanimous medical opinions that the work injury combined with the preexisting condition at L5-S1, that employer had properly accepted the claim as a combined condition. The ALJ further concluded that employer's denial of the claimed condition was appropriate, because employer had met its burden to show that the otherwise compensable injury was not the major contributing cause of the combined condition.
On appeal to the board, claimant contended that the degenerative disc condition at L5-S1 was not arthritis, because it did not involve "inflammation" of a joint. Accordingly, claimant argues, his claim does not involve a "preexisting condition" within the meaning of ORS 656.005(24)(a). The board agreed with claimant and ordered the claim accepted. As the board explained, in order to qualify as a legally cognizable preexisting condition under ORS 656.005(24)(a)(A), the preexisting condition must either be "arthritis or an arthritic condition," or it must have been diagnosed or treated before the initial injury or the onset of the new medical condition. Based on the record before it, the board concluded that the record did not establish the existence of either of those criteria.
Citing its opinion on remand in Karjalainen, 59 Van Natta 3076, 3078 (2007), the board noted that, although the medical opinions described claimant's disc condition as a "degenerative arthritic condition with natural aging," the medical evidence did not specifically address whether the degenerative condition involved inflammation. Further, the board reasoned, the medical evidence in the record about the nature of claimant's disc degeneration contradicted the medical conclusion that it was an "arthritic" condition. The board noted that the physicians' reports had described claimant's condition as involving "desiccation." Referring to dictionaries *553 for a definition of that term, the board found that "desiccated" means "dried up." Dorland's Illustrated Medical Dictionary 451 (28th ed 1994). "Inflammation," in contrast, involves other mechanisms: "[A] complex series of events, including dilation of arterioles, capillaries, and venules, with increased permeability and blood flow; exudation of fluids, including plasma proteins; and leukocytic migration into the inflammatory focus." Id. at 839.
Based on those definitions, the board found that the description of claimant's disc as "desiccated" indicates that it had "dried up" rather than become inflamed. The board explained, "Without further explanation, we do not find that claimant's degenerative L5-S1 disc condition involved inflammation of a joint. Therefore, it is not a legally cognizable `preexisting condition.'" Because the evidence in the record established that claimant's work injury was a material contributing cause of his condition, the board determined that claimant had established the compensability of his claim.
Board Member Langer dissented, asserting that the majority had exceeded its authority by referring to dictionary definitions for the meanings of "desiccation" and "inflammation" and, in effect, reaching a medical conclusion contrary to the medical evidence presented at the hearing. Langer opined that the majority's reasoning would require either that physicians use the magic word "inflammation" in describing arthritis, or that the board undertake an examination of the record to determine whether a condition that the medical experts have described as arthritis really is arthritis because it involves inflammation. In Langer's view, where the medical experts agree that a claimant's condition is arthritis, the board must accept that conclusion, even if the medical record does not reflect that the particular condition involves joint inflammation. Langer asserted that, by examining a medical dictionary for the definitions of "desiccation" and "inflammation," and concluding that the condition does not qualify as an "arthritic condition," the majority impermissibly substituted its judgment for that of the uncontested expert medical opinions.
On review, employer essentially reiterates Langer's dissenting position and contends that the unrebutted medical evidence shows that claimant has a preexisting arthritic condition. In employer's view, the board erred in relying on dictionaries to contradict the medical opinions in the record and determine that claimant's degenerative desiccation is not arthritis. In reaching that conclusion, employer asserts, the board erroneously substituted its own judgment for the undisputed medical evidence.
Claimant responds, correctly, that the board did not err. In concluding that claimant's condition did not constitute arthritis as that term is defined for purposes of ORS 656.005(24), the board was not substituting its judgment for that of the medical experts. Rather, the board was simply considering whether the medical record supported a finding that claimant's condition was a legally cognizable preexisting arthritis. In Karjalainen, we said that arthritis is an inexact term, the meaning of which is a question of law. 208 Or.App. at 681, 146 P.3d 336. As we explained in that case, the approach indirectly endorsed by the dissenting board member and employer of allowing medical experts to determine on a case-by-case basis whether the condition is arthritic is not permissible. Id. ("In no event is the meaning of a statutory term determined as a question of fact. That is because statutes areby definitionlaw, and their interpretation is always a question of law."). (Emphasis in original.) We concluded that arthritis, for purposes of ORS 656.005(24) "refers to an inflammation of one or more joints." Karjalainen, 208 Or.App. at 685, 146 P.3d 336.
After this case was submitted, in Hopkins v. SAIF, 349 Or. 348, 364, 245 P.3d 90 (2010), the Supreme Court modified that definition slightly:
"We conclude that, when the legislature adopted SB 485, it intended the term `arthritis' to mean the inflammation of one or more joints, due to infectious, metabolic, or constitutional causes, and resulting in breakdown, degeneration, or structural change."
The court said, further, that an employer must establish by expert testimony that the *554 claimant suffers from "inflammation of whatever joint or joints it contends are affected by the arthritic condition." Id. at 363, 245 P.3d 90.
Thus, despite the existence of medical opinions in the record that claimant's condition is arthritis or arthritic, the board was required to determine in the first instance whether the record was sufficient to establish that claimant suffers from that condition as legally defined. In examining the medical record to determine whether it shows that claimant is suffering from arthritis as this court defined it in Karjalainen (as later modified by the Supreme Court in Hopkins), the board properly inquired into whether claimant's condition involves an inflammation of a joint. Finding no evidence of that, the board correctly determined that claimant's condition is not arthritic.
Affirmed.
NOTES
[1] ORS 656.005(24)(a) defines "preexisting condition" as

"any injury, disease, congenital abnormality, personality disorder or similar condition that contributes to disability or need for treatment, provided that:
"(A) Except for claims in which a preexisting condition is arthritis or an arthritic condition, the worker has been diagnosed with such condition, or has obtained medical services for the symptoms of the condition regardless of diagnosis; and
"(B)(i) In claims for an initial injury or omitted condition, the diagnosis or treatment precedes the initial injury;
"(ii) In claims for a new medical condition, the diagnosis or treatment precedes the onset of the new medical condition; or
"(iii) In claims for a worsening pursuant to ORS 656.273 or 656.278, the diagnosis or treatment precedes the onset of the worsened condition."