Argued and submitted December 3, 2015; reversed and remanded as to claim for medical services, otherwise affirmed July 26; petition for review denied December 28, 2017 (362 Or 300)

In the Matter of the Compensation of
Daniel B. Slater, Claimant.

Daniel B. SLATER,
*Petitioner,*

*v.*

SAIF CORPORATION
and Coe Manufacturing,
*Respondents.*

Workers' Compensation Board
1203369, 1200682; A156512

400 P3d 969

Julene M. Quinn argued the cause and filed the briefs for petitioner.

David L. Runner argued the cause and filed the brief for respondents.

Before DeVore, Presiding Judge, and Lagesen, Judge, and Flynn, Judge pro tempore.*

---

* Lagesen, J., *vice* Duncan, J. pro tempore.

### FLYNN, J. pro tempore

Claimant seeks review of a Workers' Compensation Board (board) order that upheld SAIF's denial of claimant's previously accepted combined condition of the left knee and upheld SAIF's medical services denial of a diagnostic MRI for claimant's left knee. Claimant contends that SAIF failed to meet its burden to prove that claimant suffers from a qualifying preexisting condition that became the major contributing cause of claimant's combined condition. Claimant alternatively contends that the board applied the wrong legal standard when it required claimant to prove that the diagnostic MRI is a medical service directed to a condition caused in major part by claimant's injury. We conclude that the board permissibly construed the medical evidence as proving that claimant's osteoarthritis is a qualifying "preexisting condition" that became the major contributing cause of claimant's left knee combined condition. However, we also conclude that the board erred in failing to consider whether the MRI is directed to claimant's left knee strain and meniscal tear, which remain accepted conditions. Accordingly, we reverse and remand for the board to make that determination.

## I. INTRODUCTION

We begin with an overview of the relevant law regarding a "combined condition," because that law provides context for the pertinent facts and for our analysis of the arguments presented. Ordinarily, a claimant establishes compensability of a work injury by proving "that the work-related injury is a 'material' cause of the disability or the need for treatment." *Brown v. SAIF*, 361 Or 241, 250, 391 P3d 773 (2017). However, when "an otherwise compensable injury" combines with a qualifying "preexisting condition to cause or prolong disability or a need for treatment," the resulting condition is a "combined condition" and is

> "compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

*Id.* (quoting ORS 656.005(7)(a)(B)). After accepting a combined condition claim, an insurer may deny the condition "if the otherwise compensable injury ceases to be the major contributing cause." ORS 656.262(6)(c).

When the claimant challenges the denial of a "combined condition," it is the insurer's burden to prove that the worker has a qualifying "preexisting condition and that the compensable injury is not the major contributing cause of the disability or need for treatment." *Hopkins v. SAIF*, 349 Or 348, 352, 245 P3d 90 (2010) (citing ORS 656.266(2)(a) (footnote omitted)). In this context, the "otherwise compensable injury" refers to the "accepted medical condition" that combines with a "preexisting condition." *Brown*, 361 Or at 272-73. A qualifying "preexisting condition" means that the worker "'has been diagnosed with such condition, or has obtained medical services for the symptoms of the condition,' or suffers from 'arthritis or an arthritic condition.'" *Hopkins*, 349 Or at 352 (quoting ORS 656.005(24)(a)(A) (footnote omitted)). By "arthritis," the legislature meant "the inflammation of one or more joints, due to infectious, metabolic, or constitutional causes, and resulting in breakdown, degeneration, or structural change." *Id.* at 364. In addition, "because [ORS 656.262(6)(c)] provides that a combined condition that has been accepted may be denied when the otherwise compensable injury 'ceases' to be the major contributing cause of the combined condition, the statute necessarily requires that there be a change in the worker's condition." *Oregon Drywall Systems, Inc. v. Bacon*, 208 Or App 205, 208-09, 144 P3d 987 (2006).

## II. BACKGROUND

Claimant injured his left knee in October 2005, while working for an employer insured by SAIF. He sought treatment from Dr. Di Paola, who diagnosed "medial compartment degenerative arthrosis" as well as a medial meniscal tear, for which he performed surgery. Following surgery, Di Paola described claimant's condition as a work-related left medial meniscus tear and preexisting "diffuse chondromalacia" of the patellofemoral joint and medial compartment. When SAIF closed the claim it specified that claimant's accepted conditions for the October 2005 injury

included medial collateral ligament strain of the left knee and left medial meniscus tear.

After SAIF closed the claim, claimant returned occasionally to Di Paola for recurring symptoms of his left knee condition, which Di Paola described as a combining of the meniscal tear with preexisting degenerative changes. In 2011, claimant again returned to Di Paola with ongoing problems in the left knee that had been worsening over time. Di Paola opined that claimant had experienced a "worsening of his preexisting degenerative arthritis that is not attributable to his interval meniscal tears and their surgical treatment." When claimant asked SAIF to accept his medial compartment degenerative changes, SAIF denied that request but issued a modified notice of acceptance in which it specified that, "[i]n addition to" the previously accepted conditions, SAIF was accepting—"as of" the date of the 2005 injury—a combined condition consisting of the previously accepted conditions "combined with pre-existing left knee osteoarthritis."

A few months after issuing the modified notice of acceptance, SAIF issued a denial of claimant's combined condition in which it specified that "as of July 22, 2011, [claimant's] accepted injury is no longer the major contributing cause of [his] combined condition." SAIF also refused to pay for a diagnostic MRI that two of claimant's doctors recommended "to make sure [claimant's] ACL is intact and to make sure [claimant] does not have a new injury." Claimant challenged both denials and the disputes were consolidated for hearing.

At the hearing, SAIF relied on a concurrence report[1] in which Di Paola did not use the term "osteoarthritis" but opined that claimant "has a classic case of arthritis in his left knee involving the inflammation of one or more joints, due to infectious, metabolic, or constitutional causes, and resulting in breakdown, degeneration, or structural change." Claimant relied on the opinion of one of his other

---

[1] The opinion is presented as a detailed summary prepared by an attorney for SAIF, which Di Paola confirmed "accurately reflects" his opinion. We refer to it as a "concurrence report" to distinguish it from Di Paola's earlier, less comprehensive, reports.

doctors, who opined that "osteoarthritis is considered a non-inflammatory condition."

The administrative law judge (ALJ) set aside both denials, but the board reversed. The board found that the medical evidence established "the presence of a statutory 'preexisting condition' (osteoarthritis)," citing Di Paola's opinion, and that "the medical evidence establishes that the preexisting condition is the major contributing cause of the disability or need for treatment of [claimant's] combined knee condition." (Footnote omitted.) The board also upheld SAIF's denial of the diagnostic MRI because that medical service was not "directed to a medical condition caused in major part by the injury."

## III. DISCUSSION

On review, claimant challenges both rulings of the board. First, claimant argues that the board erred in accepting Di Paola's opinion as legally sufficient to meet SAIF's burden to prove that claimant suffers from a qualifying "preexisting condition" that is the major contributing cause of claimant's combined condition. Second, claimant contends that SAIF failed to prove a change in the causal relationship between claimant's compensable injury and the osteoarthritis after the date that the combined condition was accepted, *i.e.*, "that the compensable injury has *ceased* to be the major contributing cause." (Emphasis in original.) Finally, claimant argues that the board erred in evaluating the claim for medical services under the major contributing cause standard. We review the board's decision under the standard articulated in ORS 183.482(8)(c), under which we are directed to set aside or remand the order if we conclude that the board erroneously interpreted a provision of law or that the board's findings are not supported by substantial evidence. ORS 656.298(7).

### A. *Legal Sufficiency of Di Paola's Opinion*

Claimant argues that the board erred in accepting Di Paola's opinion as proof that claimant's "osteoarthritis is a qualifying preexisting condition" or that, "as weighed against the osteoarthritis, the compensable injury is no longer the major contributing cause of the combined condition"

because, according to claimant, Di Paola cannot "reasonably be interpreted" as expressing either opinion. In reviewing the board's evaluation of expert medical opinions, our role "is to determine whether the evaluation is supported by substantial evidence, that is, evidence that, considering the record as a whole, would permit a reasonable person to make the findings." *Hutchings v. Amerigas Propane*, 275 Or App 579, 595, 365 P3d 636 (2015), *rev den*, 358 Or 833 (2016) (internal quotation marks omitted); *see also SAIF v. Williams*, 281 Or App 542, 548, 381 P3d 955 (2016) (emphasizing that, "[o]n review of the board's evaluation of expert opinions, we do not substitute our judgment for that of the board; rather, we determine whether the board's evaluation of that evidence was reasonable" (internal quotation marks omitted)). We conclude that the board's interpretation of Di Paola's opinion is reasonable in the context of the record as a whole.

The premise of claimant's argument is narrow. He acknowledges that Di Paola's concurrence report offers his opinions that (1) claimant's otherwise compensable injury combined with a preexisting condition that meets the *Hopkins* criteria for qualifying preexisting "arthritis" and (2) claimant's work injury was no longer the major contributing cause of claimant's combined condition.[2] However, claimant emphasizes that the report expressing those opinions refers to claimant as suffering from preexisting "degenerative arthritis" and "chondromalacia" and does not use the term "osteoarthritis." Claimant argues that the board, therefore, erred in interpreting Di Paola's opinion as addressing the "osteoarthritis" condition that is at issue in SAIF's combined condition denial.

1. *Di Paola's opinion as proof that "osteoarthritis" is "arthritis"*

SAIF argues that the medical evidence as a whole supports the board's finding that Di Paola considered claimant's

---

[2] Citing similar acknowledgments by claimant below, SAIF contends that claimant failed to preserve his argument that SAIF failed to meet its burden of proof. We disagree and reject SAIF's preservation argument without further written discussion.

"osteoarthritis" to be synonymous with "arthritis" and, thus, that Di Paola's description of claimant's degenerative knee condition as "a classic case of arthritis" involving "inflammation of one or more joints" was a description of claimant's "osteoarthritis" condition. We agree.

Over the years, Di Paola used varying terminology to refer to the preexisting state of claimant's knee, including "degenerative changes," "arthritic condition," "arthritis," "chondromalacia," and "end-stage osteoarthritis." Indeed, in a 2011 report, he used multiple terms in the same sentence, reporting that he had a "lengthy discussion" with claimant about the "causes of knee arthritis" and had advised claimant that "there is no evidence that" the surgery he performed for claimant's meniscal tear "makes any material change in the relentlessly progressive degeneration of end-stage osteoarthritis." Thus, when Di Paola opined that claimant has "a classic case of arthritis," satisfying the criteria for that label identified in *Hopkins*, the board could reasonably construe that opinion as referring to the preexisting condition that SAIF identified in the combined condition acceptances as "osteoarthritis." The board acknowledged that another doctor opined that "osteoarthritis is considered a non-inflammatory condition," but the board found that opinion to be less persuasive than Di Paola's "thorough opinion" because the other opinion was not explained.

2. *Di Paola's opinion as evidence of causation*

Claimant also contends that Di Paola's opinion fails to establish the causation element of SAIF's combined condition denial. When evaluating the compensability of a combined condition, the "major contributing cause" analysis may include "only those contributing factors that make up the combined condition itself, *i.e.,* the otherwise compensable injury and the statutory preexisting condition." *Vigor Industrial, LLC v. Ayres*, 257 Or App 795, 803, 310 P3d 674 (2013), *rev den*, 355 Or 142 (2014). We will not give "evidentiary weight" to an expert opinion that fails to properly evaluate "the relative contribution of different causes." *SAIF v. Pruitt*, 198 Or App 253, 258, 108 P3d 586 (2005) (internal quotation marks omitted)).

Claimant emphasizes that Di Paola's report identifies claimant as also suffering from "chondromalacia" of the patellofemoral joint and the medial compartment of the left knee. Claimant argues that "chomdomalacia" is a different condition than arthritis. He also concludes from the discussion of "chondromalacia" existing in multiple areas of the knee that Di Paola improperly considered preexisting conditions in addition to the preexisting arthritis in evaluating the contributions to claimant's combined condition. However, Di Paola's reference to "chondromalacia" appears in a different portion of his report than does his discussion of the contributing causes of claimant's combined condition. In the portion of the report expressing his causation opinion, Di Paola compares only "preexisting degenerative arthritis" and the "work injury." Thus, a reasonable person could evaluate Di Paola's opinion—as the board did—as properly comparing only the components of the accepted combined condition when he opined that claimant's "original work injury combined with the preexisting degenerative arthritis" and that, "as of December 21, 2007, the work injury ceased to be the major contributing cause of the need for treatment."[3]

B.  *Evidence that the Compensable Injury* Ceased *to be the Major Contributing Cause*

Claimant next argues that SAIF failed to prove a "change" in claimant's combined condition after the date that it became compensable, citing the requirement that we identified in *Oregon Drywall*. 208 Or App at 208-09. SAIF does not dispute that it was obligated to prove a "change" in claimant's combined condition, but it argues that the evidence establishes the requisite change. We agree with SAIF.

As we explained in *Oregon Drywall*, the "effective date" of the acceptance of a combined condition marks "the

---

[3] Apart from claimant's challenge that Di Paola's opinion is legally insufficient, he does not challenge the board's acceptance of Di Paola's opinion over other, conflicting medical opinions. And there would be no basis for such a challenge. *See Pruitt*, 198 Or App at 258 (emphasizing that, when the board chooses between conflicting medical evidence, apart from medical opinions that are not entitled to evidentiary weight, "we will reverse the board 'only when the credible evidence apparently weighs overwhelmingly in favor of one finding and the Board finds the other without giving a persuasive explanation'" (quoting *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988)).

baseline for determining whether a claimant's condition has subsequently changed so that the otherwise compensable injury is no longer the major contributing cause of the disability or need for treatment of the combined condition." 208 Or App at 210. Moreover, the "effective date" means the date that "coincide[s] with compensability of the combined condition." *Id.* Here, SAIF's amended notice of acceptance clearly specified that it was accepting the combined condition "as of" the date of the original 2005 injury, and claimant does not contend that the medical evidence supports any later date for the combining of his degenerative arthritis and the work injury. Di Paola opined in his concurrence report that the work injury "was initially the major contributing cause" but had "ceased to be the major contributing cause," and the board found that opinion to be persuasive. In crediting Di Paola's opinion, the board necessarily found that claimant's combined condition changed after the effective date of the acceptance, and substantial evidence supports that finding.

Although claimant points to two exhibits that, he argues, undermine a finding that his condition changed after the effective date of acceptance, we do not share claimant's understanding of that evidence. First, claimant construes a stipulation that the parties entered to resolve his aggravation claim as an agreement that claimant's combined condition claim was accepted as a "new" condition, *i.e.,* arising after the original injury. However, the stipulation merely recites, historically, that "SAIF reopened the claim as a combined condition as of October 27, 2005," because the medical evidence indicated "that a new condition needed to be accepted." The stipulation does not have the significance that claimant ascribes to it. Second, claimant contends that the board's construction of Di Paola's concurrence report is inconsistent with a closing examination report that Di Paola prepared the same month, which opines that claimant had objective "findings of impairment" that were "[o]ne hundred percent (100%) *** due to the industrial injury." In claimant's view, the report suggests that Di Paola believed that claimant's work injury continues to be the major contributing cause of his combined condition. But claimant does not explain, and we cannot discern, why attributing 100 percent of claimant's impairment to the compensable injury

contradicts Di Paola's opinion that claimant's work injury ceased to be the major contributing cause of the combined condition. The report clearly specifies that "no combined conditions" were affecting claimant's impairment.

## C. *The Medical Services Denial*

Claimant's final challenge is to the board's conclusion that the major contributing cause standard governs whether the diagnostic left knee MRI is a compensable medical service. The board recited—without analysis—that, because claimant has a "combined condition," the medical services dispute is governed by "the second sentence of ORS 656.245(1)(a)," *i.e.*, by "whether claimant's proposed MRI is a medical service directed to a medical condition caused in major part by the injury." Claimant argues, however, that the board should have applied the material contributing cause standard, regardless of its conclusion that SAIF proved a combined condition. He points out that the ALJ found "that claimant's MRI was for conditions caused in material part by the injury." As claimant argued to the board, "material cause" is the correct standard because "[c]laimant still has an accepted claim for his knee injury and miniscal tear. The medical evidence indicates that it is necessitated by the work injury."[4]

We agree with claimant, in part; if the diagnostic medical service was directed to one of the originally accepted conditions, then claimant only needed to prove that the service was directed to a condition caused in material part by the injury. Insurers "are responsible for medical services 'for' conditions—that is, ordinary 'conditions'—that are 'caused in material part' by compensable workplace injuries." *SAIF v. Sprague*, 346 Or 661, 664, 217 P3d 644 (2009) (quoting ORS 656.245(1)(a)). That portion of ORS 656.245(1)(a) provides:

"For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services

---

[4] Once a worker's claim has been closed, an insurer's obligation to pay for medical services is limited, but specifically includes "[s]ervices that are necessary to diagnose the worker's condition." ORS 656.245(1)(c)(H). There is no dispute that the diagnostic MRI is a qualifying medical service within the meaning of ORS 656.245(1)(c)(H).

for conditions caused in material part by the injury for such period as the nature of the injury or the process of the recovery requires[.]"

However, the statute sets a different standard for combined conditions:

"In addition, for consequential[5] and combined conditions described in ORS 656.005(7), the insurer or the self-insured employer shall cause to be provided only those medical services directed to medical conditions caused in major part by the injury."

ORS 656.245(1)(a).

In *Sprague,* on which claimant relies, the court explained that the compensability of a requested medical service for gastric bypass surgery should be determined by first considering the condition that the medical service was "directed to." 346 Or at 673. Because the relevant condition in *Sprague* was a "consequential" arthritis condition, the court held that compensability was governed by the "caused in major part" test for consequential and combined conditions. *Id.* at 672-73. *Sprague* ultimately focuses on whether the claimant needed to prove that the compensable injury was the major contributing cause of the need for surgery or only of the condition to which the surgery was "directed," and concludes that the latter is the correct focus. *Id.* at 674. Thus, *Sprague* does not resolve claimant's contention that the "material" contributing cause standard may continue to apply to some medical services disputes when the insurer has accepted both ordinary conditions and a combined (or consequential) condition. Nevertheless, *Sprague*'s construction of ORS 656.245(1)(a) is consistent with claimant's argument that compensability of a medical service is governed by the causation standard that applies to the condition that a particular service is "directed to."

Claimant also relies on *SAIF v. Carlos-Macias,* 262 Or App 629, 633, 325 P3d 827 (2014), in which we affirmed a board decision that the employer was responsible for medical services "aimed at determining the 'extent' of claimant's

---

[5] "Consequential" conditions, which are not at issue here, are conditions that are "compensable as a consequence of a compensable injury." ORS 656.005(7)(a)(A).

injury" to his shoulder, even though SAIF had denied that the claimant's current shoulder complaints were caused by his accepted conditions. We explained that "the board correctly pointed out that the 'issue of whether the proposed diagnostic procedures are necessary to determine the extent of the compensable injury is different from the issue of whether the current left shoulder condition is compensable.'"[6] *Id.* at 637. Although *Carlos-Macios* did not involve a combined condition or consider whether the major contributing cause standard applied to the claim for medical services, it supports claimant's argument that the issue of whether the proposed diagnostic MRI is necessary to determine the extent of his compensable injury is separate from the issue of whether his combined condition is currently compensable.

More significantly, the text of ORS 656.245(1)(a) indicates that claimant's construction is correct. The statute specifies that, "for consequential and combined conditions," the insurer only needs to pay for medical services "directed to medical conditions caused in major part by the injury." It also specifies that that standard is "[i]n addition" to the obligation to "provide medical services for conditions caused in material part by the injury." Based on the provisions of ORS 656.245(1)(a) as a whole, and as that statute was construed in *Sprague* and *Carlos-Macias*, we conclude that the presence of a combined or consequential condition does not eliminate the insurer's obligation to pay for medical services directed to other compensable conditions that are caused in material part by the injury. Rather, the governing causation standard depends on whether the medical services are directed to either a combined or consequential condition. If the services are directed to a condition that is not a consequential or combined condition, then the relevant inquiry is whether the condition to which the services are directed

---

[6] *Carlos-Macias* also held that, for purposes of ORS 656.245(1)(a), the "compensable injury" for which the employer shall provide medical services means more than the "accepted conditions," relying on our decision in *Brown v. SAIF* regarding the same term as used in the definition of a "combined condition" 262 Or at 637 (citing *Brown v. SAIF*, 262 Or App 640, 648-56, 325 P3d 834 (2014), *rev'd*, 361 Or 241, 391 P3d 773 (2017). The Supreme Court has since reversed *Brown* but acknowledged that the workers' compensation statutes sometimes appear to use the term "injury" as distinct from the accepted conditions and expressly reserved judgment on the meaning of that phrase in the medical services context. 361 Or at 282.

is caused in material part by the compensable injury. The board erred in presuming that, because SAIF proved that claimant has a combined condition, compensability of the diagnostic medical service is governed by the major contributing cause standard.

Although SAIF argues that the purpose of the MRI was "merely to determine whether claimant's overall degenerative joint disease has progressed to the point that knee replacement surgery is medically appropriate," there is evidence to the contrary. In addition to the combined condition involving claimant's degenerative arthritis, SAIF accepted a medial meniscus tear and medial collateral ligament sprain related to claimant's 2005 industrial injury, and those conditions remain compensable. *See South Lane County Sch. Dist. #45-J3 v. Arms*, 186 Or App 361, 367, 62 P3d 882, *rev den*, 74 P3d 112 (2003) (explaining that a denial of the continuing compensability of a combined condition is not a denial of the underlying accepted injury, which remains compensable). Indeed, Di Paola's closing report, written after the combined condition ceased to be compensable, is evidence that the underlying accepted conditions continue to cause symptoms that are distinguishable from the combined or preexisting condition. In that report, Di Paola identifies objective findings of impairment that he opined are due "100%" to "the industrial injury" with no contribution from either "any preexisting condition" or from "combined conditions." In addition, the ALJ found that two doctors "have indicated that the MRI was necessitated in material part by claimant's October 27, 2005 injury and was a diagnostic medical service that will assist in determining the extent of claimant's October 27, 2005 work injury." The board did not address the factual issue of whether the MRI is "directed to" the combined condition or to another condition caused in material part by the compensable injury. Because resolution of that factual dispute will determine which causation standard governs the medical services dispute, we remand for the board to resolve that dispute in a manner consistent with this opinion.

Reversed and remanded as to claim for medical services; otherwise affirmed.